In re DISTRICT 65, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, Debtor.

**NEW YORK PROPERTY HOLDING CORP., Appellant,**

v.

**DISTRICT 65, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, Appellee.**

No. 94 Civ. 0660(KTD).

United States District Court, S.D. New York.

March 20, 1997.

See also 184 B.R. 196.

Joel Lewittes, Cummings & Lockwood, Stamford, CT, for appellant.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

This is an appeal from two bankruptcy orders of Bankruptcy Judge Conrad. The orders relate to an agreement ("the Agreement") between the debtor District 65 ("the Union") and the Appellant, New York Property Holding Corp. (the "Purchaser" or "NYPHC"), pursuant to which NYPHC was to purchase the premises at 13–25 Astor Place ("the Property").

The Agreement set the purchase price at $5,650,000 and required NYPHC to make a $100,000 deposit upon its execution and another $150,000 upon the Bankruptcy Court's approval of the sale. Under the Agreement (Art. 2):

> Purchaser's failure to make any of such payments when due shall constitute Purchaser's material breach of, and default under this Contract and shall, in addition to any other rights and remedies Seller may have under the circumstances, entitle Seller to cancel and terminate this Contract and to retain all sums theretofore paid by Purchaser as agreed liquidated damages hereunder.

The Agreement required the Union, as seller, to provide vacant premises upon conveyance of title to the Property (Art. 6):

Except as to the leases, tenancies and occupancies set forth on the annexed Schedule C, the premises shall be vacant and reasonably free of rubbish and debris upon conveyance of title and delivery of possession.

The Agreement recognized that it—as well as the Union's obligations under it—was subject to the Bankruptcy Court's approval (Art. 14(a)):

this Contract, and Seller's obligations hereunder, are subject to and conditioned upon the entry of an order by the Bankruptcy Court approving this Contract [and] the sale hereunder ...

The Agreement also contained a provision establishing time to be of the essence *against NYPHC, the Purchaser* (Art. 14(d)):

Time shall be of the essence as against Purchaser as to the Closing of the title hereunder by the 45th day after [ ] approval [of the Agreement by the Bankruptcy Court], subject, however, to a reasonable further adjournment by seller only, for any reason, or to an adjournment with Seller's consent, in either of which events time shall be of the essence as against Purchaser on such adjourned date of closing.

The Agreement contained a provision preventing the parties from orally modifying or terminating it (Art. 22) and one providing that the Agreement would be governed and construed under New York law (Art. 23).

## BACKGROUND

The facts, as found by Judge Conrad, are as follows. The Union filed a Chapter 11 petition in January, 1993. In June 1993, the Union and the Purchaser signed the Agreement. Judge Conrad approved the Agreement by an Order of Sale he issued on July 6, 1993. The initial scheduled closing date was August 20, 1993, but the parties failed to close on that day. The parties were unable to close by August 23, 1993, 45 days after Judge Conrad had approved the Agreement.

On September 29, 1993, the Union requested an adjournment to extend the closing date

fixed in the Bankruptcy Court's order of sale for an additional 67–day period until (and including) October 29, 1993, *solely at its own discretion and with time of the essence as against the NYPHC.* The NYPHC, in the form of objections to the Union's application for an extension order, requested that the court provide a new closing date which would be "at least 45 days after the compliance by the Debtor of the provisions for delivery of possession so as to enable the purchaser to execute the commitment and close title in accordance with the terms of the contract." The Purchaser explained its request as follows:

The purchaser has sought financing and one of the conditions for issuing the commitment was the vacancy of the entire building other than those units set forth on Schedule C. As of this date, notwithstanding the assurance of the [Union] that the same would be vacant, the premises is still occupied by various union organizations. Obviously, the [Union] has not complied with the terms of the agreement and is not now willing and able to close.

On October 7, 1993, Judge Conrad issued an Order authorizing the Union to extend the closing date until (and including) October 29, 1993. The Order stated the following:

ORDERED, that any such adjournment of the closing of title shall be solely at Debtor's discretion, with time of the essence as against Purchaser on such adjourned date; and it is further

ORDERED, that except as herein provided, the Order of Sale shall be and remain in full force and effect according to its terms.

ORDERED, that the objection of [Purchaser] is DENIED.

On October 11, 1993, the Union scheduled a new closing date of October 22, 1993 and so notified the Purchaser. On October 13, 1993 Purchaser notified the Union that it rejected October 22 as a closing date and requested a further adjournment. The Union treated this rejection as an anticipatory breach of the Agreement. *On October 21, 1993 the Property was fully vacated;* thus the Union was prepared to close the next day. On October

22, the Purchaser requested that the court adjourn the closing date.

Between August and October, the parties corresponded regularly in an attempt to close the transaction. In his Order of February 11, 1994 ("the February Order"), Judge Conrad had this to say about their correspondence (at 3, fn. 3):

> Although the dialogue between the parties addressed conditions requisite before closing could occur, no dates were set for closing with the exception of August 23 and October 22. * * * Apparently, Purchaser's funding was subject to vacancy of the premises. Because the contract only required the premises to be vacant upon closing, [the Union] did not entirely vacate the premises until immediately before the October 22 closing date. Purchaser's complaint of "four months of broken promises" (Response of [Purchaser] to [Union]'s 6 December 1993 Letter Reply to Memorandum, p. 4) refers to assurances made by the [Union]—unrelated to any contract conditions—that the property would be vacated. Such assurance were not provided by the contract, nor was vacancy prior to closing. Only one true adjournment of the contract occurred.

Between October 29th and December 2nd, the Union negotiated the terms of a new Purchase Agreement with IOWNA Corporation. At a hearing on December 2, Judge Conrad offered the Purchaser one more opportunity to close the transaction at that time, but the Purchaser was unable to close then and there; rather it offered $1,000,000 in bank checks and asked for an additional week to provide the rest of the purchase price.

At that point in the hearing, the Union pointed out that the Agreement was "not conditioned on financing; financing is not our concern, and we also had no obligation to assist [Purchaser] in their financing if the question was whether or not the building was vacant." Judge Conrad agreed with the Union. He ruled in the course of the hearing that the Agreement was no longer in effect because the Purchaser had defaulted ("the December Order"). He also signed an Order which authorized the Union to sell the Prop-

erty to IOWNA for $6 million—$350,000 more than the Purchaser had agreed to pay. The Purchaser asked for an evidentiary hearing to determine "the reasonableness of the [Union]'s unilateral fixing of a 'time of the essence' closing date" of October 22nd and whether or not the Union had acted in bad faith in setting that date.

In his memorandum of February 11, 1994, Judge Conrad ruled that the Union fairly withheld the Purchaser's $250,000 deposit as liquidated damages pursuant to the Agreement. In March, 1994, he signed an Order submitted by the Union authorizing it to retain the deposit as liquidated damages ("the March Order"). The Purchaser is now seeking reversal of the Orders.

## DISCUSSION

■ In its brief on appeal, the Purchaser makes much ado about two totally irrelevant subjects: (1) its own financing requirements; and (2) the fact that the building did not become totally vacant until the day before the date for closing. The contract clearly was not conditioned upon or subject to the Purchaser obtaining financing. The Purchaser was represented by able counsel at the time that the contract was signed. The contract specifically provided that it could not be changed orally. For the Purchaser to complain now about these items is totally inappropriate. Likewise, there was no requirement in the contract for prior vacancy of the building—only that the building be vacant as of the date set for closing. That happened and Purchaser has no real complaint on the vacancy question.

I turn then to the legal issues raised by the Purchaser. Both of these issues are merely matters of contract interpretation.

■ The first argument advanced by Purchaser complains that the Bankruptcy Court made "Time of the Essence," whereas the Purchaser claims it should have had "a reasonable time" to close the deal. This argument totally ignores the plain words of the contract. The words "time shall be of the essence as against ... Purchaser on such adjourned date of closing" mean just that. The fact that the adjourned date was also

included in a court order certainly does not take away from the "Time of the Essence" factor. Being unwilling or unable to close on the adjourned date does not relieve Purchaser of its obligations nor of its breach of contract.

The second issue raised is whether or not the Purchaser's down payment may be retained by the Bankrupt's Estate. The answer, once again, is to be found in the Contract. Article 2 of the Agreement provides that any breach "entitle[s] the Seller to cancel and terminate this contract and retain all sums therefor paid by Purchaser as agreed liquidated damages hereunder." Purchaser would have this court refund its down payment because the Debtor was fortunate enough to be able to sell the property involved at a price higher than that contained in the Contract. The idea behind liquidated damages, however, is for the parties to set a sum to be considered as damages without regard to the real damages, thus, if the Bankrupt's Estate had been seriously damaged in an amount far in excess described in the Contract, the Purchaser would not want to pay the higher sum, but would then rely upon the liquidated damages clause. The liquidated damages clause is for the benefit of both parties and, even though the Bankrupt's Estate was not severely damaged, the Estate is entitled to the liquidated sum as prescribed in the contract.

The various arguments raised by the Appellant are truly not about the actions of the Debtor or the decision of the Bankruptcy Court, but are really complaints against the bargain which the Purchaser made. Having made just that bargain, the Purchaser has no right to ask to be relieved of it merely because its unreasonable expectations were unfulfilled.

The Orders appealed from are hereby affirmed.

SO ORDERED.